UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2021
```

---------------------------------------------------------------X
SARAH VALELLY, on behalf of herself,          :
individually, and on behalf of all others similarly-   :
situated,                                      :
                                               :
                                   Plaintiff,  :           19-CV-7998 (VEC)
                                               :
           -against-                           :           OPINION AND ORDER
                                               :
                                               :
MERRILL LYNCH, PIERCE, FENNER &                :
SMITH INC.,                                    :
                                               :
                                   Defendant.  :
---------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

This case involves the "sweep" feature of three Merrill Edge Self-Directed Investing

Accounts owned by Plaintiff. The sweep feature allowed Defendant to sweep Plaintiff's

uninvested cash into a Bank of America money market account. Plaintiff's initial complaint

asserted claims for quasi contract, breach of contract, breach of suitability standards, and breach

of the Massachusetts Consumer Protection Law on behalf of herself and three putative classes.

Dkt. 1 ("Compl."). On June 3, 2020, the Court granted Defendant's motion to dismiss the

complaint, but allowed Plaintiff to move for leave to amend her breach of contract claim. Dkt.

31. On July 13, 2020, Plaintiff moved for leave to file an Amended Complaint. Dkt. 34.

Plaintiff's proposed amended complaint ("PAC") includes additional factual allegations to

support her claim that Defendant breached the "reasonable rate" provision of the Client

Relationship Agreement. *See* Dkt. 34, Ex. 1 ("PAC") ¶¶ 230-355. The PAC also alleges a "new

claim" regarding the interest rate Defendant paid on Plaintiff's "linked" retirement accounts. *Id*.

¶¶ 2, 356-71. Finally, the PAC renews Plaintiff's claim for unfair and deceptive trade practices

under the Massachusetts Consumer Protection Law. *Id.* ¶¶ 384-93. For the following reasons, Plaintiff's motion for leave to file an amended complaint is GRANTED.

## BACKGROUND

Because the underlying facts of this case have not changed since the Court's ruling on Defendant's motion to dismiss, the Court refers the reader to that Opinion for a full discussion of the facts. Dkt. 31.

## DISCUSSION

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court "should freely give leave [to amend] when justice so requires." Leave to amend should only be denied if there is "substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000). Leave to amend is futile if the proposed amendment "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d. Cir. 2002).

### A. Breach of the "Reasonable Rate" Provision

Plaintiff's initial complaint alleged that Defendant breached the "reasonable rate" provision of the Client Relationship Agreement by failing to pay a reasonable rate of interest on the uninvested cash in her retirement accounts. Compl., Dkt. 1 ¶¶ 86, 200, 215, 226; Mishkin Decl., Dkt. 18 Ex. A at 5 ("The interest paid on retirement account assets will be at no less than a reasonable rate."). The Court held that Plaintiff failed to allege adequately that the 0.14% interest rate paid on the cash swept into her Bank of America account was, in fact, not reasonable for a money market deposit account. Dkt. 31 at 12-13. The Court rejected Plaintiff's comparisons to interest rates paid on entirely distinct products, such as money market mutual funds. *Id.*

2

Plaintiff's PAC includes data from Informa, ICMA-RC, and the Securities and Exchange Commission to support her claim that the 0.14% interest rate paid on her money market account was not reasonable.  PAC ¶¶ 285-303.  The PAC alleges that the average interest rate paid by FDIC-insured United States banks from August 2017 through March 2019 ranged from 0.19% to 0.36% and that the average interest rate paid by the top 50 banks in the United States on cash balances in excess of $50,000 ranged from 0.20% to 0.38%.  PAC ¶ 285.  Accordingly, at the pleading stage, Plaintiff has adequately alleged that Defendant's 0.14% interest rate was significantly lower than the average rates paid by banks across the United States; given that, a finder of fact could determine that the rate paid was not reasonable.[1]

The PAC also alleges that from August 2017 to March 2019, the average interest rate paid by FDIC-insured online banks on deposits over $50,000 ranged from 0.55% to 0.95% and that the average interest rate paid by online banks on deposits over $10,000 ranged from 0.53% to 0.85%.  PAC ¶¶ 287-88.  Defendant argues that interest rates paid by online banks are not comparable to the rate paid on Plaintiff's money market deposit account because online banks typically offer higher interest rates than banks with brick and mortar branches because they have lower overhead costs.  Def. Opp., Dkt. 39. at 13-14.  The Court agrees that is why online banks pay higher interest rates but disagrees that their higher interest rates are entirely irrelevant to Plaintiff's claim.  Although full service brick and mortar banks such as Bank of America generally pay lower interest rates than online banks, it was Defendant that chose Bank of America to host Plaintiff's sweep account.  The relevant inquiry remains whether Defendant's

---

[1]     The Court notes however, that the mere fact that Defendant's rate was below the *average* rate does not prove that the rate was not "reasonable."  Plaintiff will ultimately need to point to more than just the average rates across the country to prevail on her claim that the rate paid was not reasonable.  *See Brock v. Walton*, 794 F.2d 586, 588 (11th Cir. 1986) ("Since we hold that a reasonable rate may be different from the prevailing or market rate, that evidence alone is insufficient to show that the trustees of a retirement plan have not made their loans at rates which 'bear a reasonable rate of interest.'").

rate was reasonable for a money market deposit account.  As mentioned *supra*, Plaintiff has adequately alleged that Defendant's rate was significantly lower than the average rates paid by FDIC-insured banks on deposit accounts across the United States.  Merrill Lynch may have many explanations for why it chose to sweep excess cash to its affiliated bank and a finder of fact may agree that the interest rate paid was reasonable.  Or, a finder of fact could conclude that Merrill Lynch swept huge amounts of cash into its affiliated bank, yielding an interest rate that was not reasonable because the characteristics of a full service bank that result in it paying a lower interest rate on deposit accounts than other FDIC-insured institutions are neither relevant nor valuable to a brokerage account customer.

The Court agrees with Defendant, however, that Plaintiff's comparisons to interest rates paid on entirely distinct investment products are irrelevant and insufficient.  As the Court held in its prior opinion, comparisons to interest rates paid on investment products such as mutual funds, stable value funds, or treasury bills are irrelevant to whether the rate paid on Plaintiff's money market deposit account was reasonable. *See* Dkt. 31 at 13 (rejecting Plaintiff's comparisons to rates paid on mutual funds because mutual funds are an "entirely distinct investment option.").  Accordingly, leave to amend the complaint to add allegations based on comparisons to mutual funds, stable value funds, or treasury bills, *see* PAC ¶¶ 304-52, is denied as futile.

**B.  Failure to Pay 0.33% Interest Rate on Plaintiff's "Linked" Retirement Accounts**

Plaintiff also moves for leave to amend her complaint to assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing stemming from the interest rate Defendant paid on her "linked" retirement accounts.  *See* PAC ¶¶ 356-71.  Under the IRA and Roth IRA Agreements, Defendant was required to pay 0.33% interest on "linked" accounts with assets totaling between $250,000 and $1,000,000.  PAC ¶ 364.  In order for accounts to be "linked," for purposes of earning the higher interest rate, the Agreements require

the customer to enroll in Merrill Lynch's Statement Link Service.  Mishkin Decl., Dkt. 42 Ex. A at 43-44; Ex. B at 39-40; PAC ¶¶ 362-63.  Customers can enroll in the Statement Link Service by speaking to a financial advisor or by calling Merrill's toll-free number.  *Id*. at 40.

Plaintiff alleges that her retirement accounts were "visibly linked" on the Merrill website and that the accounts' combined assets exceeded $250,000.[2]  PAC ¶¶ 359-61.   Accordingly, Plaintiff alleges that Defendant breached its contractual obligation by paying her only 0.14% interest on her accounts, rather than the higher 0.33% rate.  *Id*. ¶ 370.  Plaintiff does not, however, allege that she enrolled in the Merrill Lynch Statement Link Service as required by the IRA and Roth IRA Agreements.  Accordingly, the Court agrees with Defendant that a breach of contract claim premised on Defendant's failure to pay her the higher 0.33% interest rate would not withstand a motion to dismiss.  *See* Def. Opp., Dkt. 39 at 23-24; *see e.g. Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-57 (2d Cir. 2016) (explaining that a court may dismiss a breach of contract claim for failure to state a claim if the terms of the contract are "unambiguous" and the plain language of the contract contradicts or fails to support plaintiff's allegations of breach).

Nevertheless, the Court grants Plaintiff leave to amend her complaint to assert a claim for breach of the implied covenant of good faith and fair dealing.[3]  The covenant of good faith and fair dealing is implicit in all contracts; it encompasses "any promises which a reasonable person

---

[2]    Plaintiff alleges that, as of August 31, 2017, she maintained a balance of $238,377 in her IRA account and $113,375 in her Roth IRA account.  PAC ¶¶ 360-61.

[3]    Defendant argues that the Court should deny Plaintiff's motion for leave to amend the complaint to add a "new" claim because it is beyond the scope of the Court's prior order.  Def. Opp., Dkt. 39 at 22.  Although the Court did not expressly grant Plaintiff leave to assert a new claim, Rule 15(a)(2) requires that leave to amend be freely given.  Moreover, because discovery has been stayed pending resolution of Defendant's motion to dismiss, there is no prejudice to Defendant to allowing Plaintiff to assert this claim in this lawsuit.  The alternative would be to deny leave, have Plaintiff file the claim in a separate lawsuit, and then consolidate the new lawsuit with this one.  That would be a huge waste of time.

in the position of the promisee would be justified in understanding were included," and it prohibits either party from acting in a manner "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998) (internal citation omitted).   Here, Plaintiff alleges that Defendant's conduct led her to believe her accounts were "linked" for purposes of earning the higher interest rate; she opened all three accounts under the same username and password and Defendant's website listed all three accounts together and displayed the aggregate balance of the accounts.  PAC ¶¶ 357-59; Valelly Decl, Dkt. 50 Exs. A-B.  Moreover, Plaintiff alleges that when she clicked on a hyperlink on Defendant's website that said "Link your internal accounts, plus those at other firms, for a complete financial snapshot," the website indicated that her three accounts were already linked; a screenshot reflects that Defendant labeled the accounts as "linked."  *See* Valelly Decl, Dkt. 50 Exs. C-D.  Accordingly, at the pleadings stage, Plaintiff has adequately alleged that Defendant's conduct led her to reasonably believe her accounts were linked and interfered with her ability to earn the higher interest rate offered under the Agreement.

### C.  Massachusetts Consumer Protection Law Claim

Plaintiff seeks to renew her previously-dismissed claim under Section 93A of the Massachusetts Consumer Protection Law ("MCPL").  To prevail on a Section 93A claim, Plaintiff must "demonstrate an unfair or deceptive act or practice by [Defendant], i.e., one that falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness."  *Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 126–27 (2007) (internal quotation marks and citation omitted); Mass. Gen. Laws. ch. 93A, § 2(c).  The Court finds that Plaintiff has adequately alleged that Defendant engaged in a deceptive practice by indicating that her accounts

were linked and failing to specify that her statements had to be "statement-linked" in order to earn the higher interest rate.[4]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the complaint is GRANTED. Plaintiff must file an Amended Complaint consistent with this Opinion by **February 5, 2021**. A pretrial conference will be held on **February 19, 2021 at 10:00 a.m.** The parties must appear for the conference by dialing (888) 363-4749, using the access code 3121171 and the security code 7998. The parties must file a joint letter and proposed case management plan by **February 11, 2021.**

The Clerk of Court is directed to close the open motion at docket entry 34.

**SO ORDERED.**

**Date:  January 25, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[4]      Defendant argues that that the Court should deny Plaintiff's motion for leave to renew her MCPL claim because it is beyond the scope of the Court's prior order. Def. Opp., Dkt. 39 at 24-25. The Court disagrees. The Court previously dismissed Plaintiff's MCPL claim on the grounds that the claim was entirely derivative of Plaintiff's quasi contract, breach of contract, and breach of suitability standards claims. Dkt. 31 at 15. Because the Court now grants Plaintiff leave to amend her breach of contract claim and to state a claim for breach of the covenant of good faith and fair dealing, Plaintiff may also renew her MCPL claim.