USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/28/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SARAH VALELLY, on behalf of herself, :
individually, and on behalf of all others similarly :
situated, :
 :
                                        Plaintiff, :        19-CV-7998 (VEC)
 :
                    -against- :        OPINION
 :
MERRILL LYNCH, PIERCE, FENNER & :
SMITH INC., :
 :
                                      Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This putative class action involves the "sweep" feature of Merrill Edge Self-Directed Investing Accounts. The sweep feature allowed Defendant to move automatically (or "sweep") Plaintiff's uninvested cash into a Bank of America money market account. In support of Plaintiff's motion for class certification, Plaintiff proffered the opinion of Dr. Micah Officer ("Dr. Officer"). *See* Dkt. 94-26.[1] On March 21, 2023, the Court granted Defendant's motion to exclude Dr. Officer's opinion and testimony. Dkts. 149, 167 (hereinafter, the "*Daubert* Op. & Order").[2] On April 4, 2023, Plaintiff filed a motion for reconsideration. Notice of Mot., Dkt. 159. For the reasons discussed below, Plaintiff's motion for reconsideration is DENIED.

---

[1] The Court denied Plaintiff's motion for class certification without prejudice to refiling after the Court's decision on Defendant's motion to exclude Dr. Officer's expert report and testimony. *See* Dkt. 145. After granting Defendant's motion, the Court held a status conference and set a briefing schedule for summary judgment. *See* Dkt. 163, 169. As discussed at the April 7, 2023, status conference, Plaintiff may renew her motion for class certification if she defeats Defendant's motion for summary judgment. *See* Hearing Tr. at 13, Dkt. 171.

[2] The Court's Opinion and Order was initially filed under seal pending cause shown by Defendant as to which portions of the Opinion, if any, required sealing. *See* Op. & Order, Dkt. 149. On April 12, 2023, the Court's Opinion and Order was publicly docketed with redactions. *See* Op. & Order, Dkt. 167.

## BACKGROUND

The Court assumes familiarity with this litigation and the *Daubert* Opinion and Order that Plaintiff has moved the Court to reconsider. The Court will provide only a brief overview of the background information pertinent to this motion.

In August 2017, Plaintiff Sarah Valelly opened three accounts at Merrill Lynch: (i) a Cash Management Account ("CMA"); (ii) a Roth Individual Retirement Account ("Roth IRA"); and (iii) a Traditional Individual Retirement Account ("Traditional IRA"). First Amended Complaint ("FAC") ¶¶ 17, 26, 44–45, 112, Dkt. 55. The Client Relationship Agreement ("CRA"), which governs all three accounts, contained a so-called "reasonable rate" provision, pursuant to which Defendant was obligated to pay no less than a reasonable rate of interest on the uninvested cash held in Plaintiff's retirement accounts. *See id.* ¶ 88. Plaintiff alleges that Defendant breached the CRA by failing to pay a reasonable interest rate on her swept cash (the "Reasonable Rate Claim"). *Id.* ¶¶ 36, 88–89, 228–34. Plaintiff also alleges that Defendant breached the implied covenant of good faith and fair dealing by failing to consider her retirement accounts "linked;" had the accounts been linked, Plaintiff would have earned a higher interest rate on the swept cash (the "Statement-Linking Claim"). *Id.* ¶¶ 2, 356–74.

On March 4, 2022, Plaintiff disclosed to Defendant that she would rely on an expert report prepared by Dr. Officer (the "Officer Report") in support of her motion for class certification. *See* Dkt. 89. Plaintiff engaged Dr. Officer as a finance consultant to opine on "two related questions," both of which he answered in the affirmative: (1) whether there is "a valid, common methodology to calculate damages on a class-wide basis," and (2) whether it is "possible to determine a reasonable interest rate that would apply to the uninvested cash in the retirement accounts of the class-members." Officer Report ¶ 2. Dr. Officer was not asked to provide "the exact reasonable interest rate for estimating damages," but rather "to discuss some

of the potential rates that could be used" to calculate damages "for all investors in the proposed class." *Id.* ¶ 26.

Plaintiff's Merrill Lynch brokerage accounts are covered by Defendant's Retirement Asset Savings Program ("RASP"). *See generally* FAC ¶¶ 42–45. "Once a RASP account is opened, uninvested cash is swept into a deposit account" — i.e., a "sweep account" — with Merrill Lynch's affiliated bank, Bank of America ("BANA").[3] Officer Report ¶ 16. Defendant's "sweep program . . . is a common feature of many retirement accounts and is used as a way to generate extra yield on uninvested cash for investors." *Id.* As the bank that holds the sweep account, BANA can use the deposited cash to make loans, just as it does with any other cash on deposit. *Id.* Banks use a portion of the interest earned on loans to compensate depositors, including those who are depositors by virtue of a sweep account, for using the depositors' funds. *See id.*

Defendant categorized RASP accounts into four tiers based on the account holder's total assets under management ("AUM"). *Id.* ¶ 17. An account holder's AUM reflects the sum of the assets in each of the account holder's "statement-linked" accounts. *Id.* The interest rate paid on cash in the sweep account varied depending on the AUM: the higher the AUM, the higher the interest rate paid to the account holder. *See id.*

In his report, Dr. Officer concluded that a common methodology exists for calculating damages: "the difference between (i) how much an account holder was actually paid on their cash in the sweep program, and (ii) how much they should have received had they been paid a '*reasonable*' rate on their cash that was in the sweep program." *Id.* ¶ 20 (emphasis in original).

---

[3]   BANA is a wholly owned affiliate and the "lead depository institution" of Bank of America Corporation ("BAC"), a publicly traded bank holding company. Officer Rebuttal at 2 n.7, Dkt. 128-16. Merrill Lynch is a U.S. broker-dealer subsidiary of BAC and an indirect affiliate of BANA. *Id.*

Dr. Officer further opined that ascertaining damages on Plaintiff's Statement-Linking Claim,[4] *see* FAC ¶ 370, would require "a mere arithmetic calculation to determine the higher rate of interest available under statement-linking for each investor in the class compared to the actual rate of interest paid without regard to statement-linking." Officer Report ¶ 38; *see also* Officer Rebuttal ¶ 129, Dkt. 128-16.

Each of Dr. Officer's proposed damages formulas required a determination of what constitutes a "reasonable" rate of interest with respect to RASP accounts. Dr. Officer discussed two potential models for determining a "reasonable" rate of interest: (1) BANA's previously used "pass-through" model, Officer Report ¶¶ 17–18; Officer Rebuttal ¶ 49; or (2) "market alternative" rates — specifically, rates paid by Treasury and Government Money Market Mutual Funds ("MMF" or "MMFs"), which BANA purportedly viewed as "highly substitutable with bank deposits as a sweep option" for customers, Officer Report ¶¶ 33–35. Defendant argued that Dr. Officer's testimony and report were inadmissible because his proposed methodologies for determining a reasonable rate of interest failed to offer any real expert analysis for how to determine a "reasonable" rate. *See* Def. Mem. at 7–8, 11, Dkt. 113. The Court agreed. *See Daubert* Op. & Order.

Plaintiff urges the Court to reconsider its decision to exclude Dr. Officer's report and testimony. *See generally* Pl. Mem., Dkt. 160. Plaintiff argues that the Court improperly considered a question that goes to the merits of the underlying action, rather than treating Dr. Officer's report and opinion as limited to answering whether predominance is satisfied — i.e., whether damages could be calculated on a class-wide basis. *Id.* at 2–3, 10. Plaintiff also argues

---

[4] For accounts to be "linked" for purposes of earning a higher interest rate on the sweep account, customers were required to enroll in Merrill Lynch's Statement Link Service by "speaking to a financial advisor or by calling Merrill's toll-free number." Op. & Order at 4–5, Dkt. 54 (Opinion & Order on Plaintiff's Motion to Amend).

that the Court erred in holding "as a matter of law, that government MMF rates are not proper comparators to deposit rates for swept cash." *Id.* at 3.  Alternatively, Plaintiff seeks clarification on the scope of its ruling: "whether the Court has ruled as a matter of law that evidence that (i) the interest rates paid by [Defendant's] competitors on MMF sweep accounts . . . and (ii) the interest rates derived through the pass-through model are not relevant to determining whether Merrill's sweep rates . . . were reasonable," or, rather, "whether the Court was only striking Officer's Report with respect to class certification." *Id.* at 5.[5]  Defendant opposes the motion. *See* Def. Opp., Dkt. 174.

## LEGAL STANDARD

A party may obtain relief on a motion for reconsideration "only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotations omitted).  "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "It is well-settled that [a motion for reconsideration under] Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise

---

[5]   Plaintiff also notes her desire to "clarify that there are aspects of Officer's Report that [Defendant] did not move to exclude and that the Court actually adopted in its Opinion — including that (i) damages can be determined on a class-wide basis using a method that does not require individual proof . . . and (ii) the risk of loss of a government MMF is more favorable or at least equivalent to the risk of loss on an FDIC-deposit account." Pl. Mem. at 9–10 (citing Officer Report ¶¶ 33–35; Officer Rebuttal ¶¶ 78–94).

taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## DISCUSSION

### I.     Plaintiff's Motion for Reconsideration Is Denied

"On a class motion, [Dr.] Officer was only required to demonstrate that the determination of a reasonable rate can be made on a class-wide basis consistent with [Plaintiff's] theory of liability." Pl. Mem. at 21.  The Court does not disagree with that statement.  But the Court did not resolve a motion for class certification.  The Court reviewed Dr. Officer's expert report and opinions and determined whether they met the standard for admissibility under Federal Rule of Evidence 702 and *Daubert*.  *See Daubert* Op. & Order at 2–3; Fed. R. Evid. 702.  Plaintiff has not identified any intervening change of controlling law, new evidence, or any clear error in the Court's decision to exclude Dr. Officer's opinion and testimony.

#### A.     The Court Will Not Reconsider Its Decision to Exclude Dr. Officer's Report and Testimony Under *Daubert*

Plaintiff first argues that the Court impermissibly applied too strict a standard when evaluating the admissibility of Dr. Officer's opinion and testimony.  Specifically, Plaintiff argues that the Court "over-stepped its role under Rule 23" when it scrutinized the admissibility of Plaintiff's expert opinion and report.  Pl. Mem. at 11.  Therein lies the rub in Plaintiff's argument: "courts in the Second Circuit regularly subject expert testimony to *Daubert*'s rigorous standards insofar as that testimony is relevant to the Rule 23 class certification analysis." *Daubert* Op. & Order at 9–10 (citing *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *7 (S.D.N.Y. Apr. 22, 2019)) (internal quotations omitted).  Because the pending motion before the Court was Defendant's *Daubert* motion, "a complete *Daubert* inquiry [was] necessary." *See id.* at 10 n.12 (quoting *In re Namenda Indirect Purchaser Antitrust Lit.*, 2021 WL 100489, at *7

(S.D.N.Y. Jan. 12, 2021)). Plaintiff's accusation that the Court "went beyond the scope of class certification" by making "substantive rulings on the merits of Officer's" damages methodologies, "contrary to binding precedent," Pl. Reply at 2, Dkt. 175, lacks merit; it also fails to grapple with Plaintiff's burden to identify an intervening change of controlling law that calls for the Court to reconsider its *Daubert* decision.

Plaintiff further argues that the Court "should have evaluated Officer's Report within the context of the class motion, and if the Court found his Report unhelpful because class-wide damages were straightforward, then the Court should have granted class certification and denied the *Daubert* motion as moot, rather than exclude Officer's Report." Pl. Mem. at 2–3; *id.* at 13 n.9. Plaintiff cites non-binding case examples where courts decided a class certification motion before deciding the admissibility of an expert witness. *See id.* at 13 n.9 (citing cases from W.D.N.Y., D. Conn., and outside this circuit). Nowhere, however, does Plaintiff suggest or even argue that the Court committed a clear error when it chose to sever the two motions and decide the *Daubert* motion first.

In short, the Court denies Plaintiff's motion for reconsideration of its decision to decide the *Daubert* motion before class certification and to exclude Dr. Officer's opinion and testimony under *Daubert*.

### B. The Court Will Not Reconsider Its Decision to Exclude Dr. Officer's Proposed Methodologies for Determining a Reasonable Interest Rate

In addition to disagreeing with the Court's decision to sever the two motions, Plaintiff argues that the Court erred when it rejected Dr. Officer's proposed methodologies for determining a reasonable rate of interest. *See* Pl. Mem at 11–13; Pl. Reply at 2–3. Rather than identify any clear error in this Court's decision to reject those purported methodologies under

7

*Daubert*, Plaintiff recycles her previous arguments in support of Dr. Officer's proposed damages methodologies.

This Court has explained numerous times that before determining any class-wide entitlement to damages, Plaintiff must prove (1) that the interest rate Defendant paid on sweep accounts was not a "reasonable" rate and (2) what a "reasonable" rate would have been. *See* Op. & Order on Mot. to Amend at 3–4 (granting Plaintiff's motion to amend the complaint); *see also* Def. Opp. at 6.  Plaintiff's own expert acknowledged this premise.  *See* Officer Report ¶¶ 2, 25. Dr. Officer offered two purported methodologies for making the requisite "threshold determination of what constitutes a 'reasonable rate.'"  *Daubert* Op. & Order at 6–7 (quoting Officer Report ¶ 25).  In a nutshell, his first "methodology" involved comparing the interest rates on different investment vehicles; his second "methodology" simply pointed to a methodology previously used by BANA.

The Court found, however, that Dr. Officer's methodologies were unsupported by any specialized knowledge or principles that would help a trier of fact determine what factors Defendant should have considered in order to set a "reasonable" rate.  *Id.* at 12.  Because Plaintiff has failed to identify how the Court clearly erred in finding that neither of Dr. Officer's proposed methodologies for determining a reasonable interest rate were relevant or helpful in assessing class-wide damages, Plaintiff's motion for reconsideration is denied.

8

> *i. The Court Will Not Reconsider Its Decision that Interest Rates Paid on Money Market Mutual Funds Are Not Appropriate Comparators When Determining What Constitutes a Reasonable Interest Rate on Bank Deposit Accounts*[6]

Plaintiff argues that "Officer's opinion reflects his expert conclusion that investors should be paid the same interest rates on similar instruments that have similar risk profiles." Pl. Mem. at 17. But Plaintiff continues to refuse to grapple with the fact that Government MMFs are not the same as FDIC-insured bank deposit accounts. Instead, Plaintiff doubles down on her theory that, because MMFs have, from the customer's perspective, a risk profile similar to that of bank deposit accounts, interest rates paid on each should be similar. *See* Pl. Mem. at 15–16. It pains the Court to articulate, yet again, that bank deposit accounts cannot be compared to Government MMFs when determining whether the former paid a reasonable interest rate. Op. & Order on Mot. to Dismiss at 13, Dkt. 31; *Daubert* Op. & Order at 17–19; Op. & Order on Mot. to Amend at 4. Plaintiff may disagree with that position, but Plaintiff is bound by it absent evidence of clear error, manifest injustice, or eventual success on appeal. *See Analytical Survs., Inc.*, 684 F.3d at 52 (motions for reconsideration are "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'").

Plaintiff further argues that whether the interest rates paid on MMFs are suitable for comparison to the interest rate paid on Plaintiff's deposit account is a question of fact that the jury must decide. *See* Pl. Mem. at 11, 20. But Plaintiff offers no evidence that the Court committed clear error when it determined, as a matter of law, that Plaintiff cannot use the interest rate paid on one type of investment vehicle to prove that the interest rate paid on a different type

---

[6]   The Court notes, as was briefly addressed in its opinion on Defendant's motion to dismiss, that the return on money market mutual funds is not "interest." *See* Op. & Order on Mot. to Dismiss at 13. Instead, the return is comprised of dividends and capital gains. For ease of discussion, however, the Court will refer to the return on money market mutual funds as "interest."

of investment vehicle is not reasonable. The Court does not disagree that MMFs and FDIC-deposit accounts are similar in terms of risk to the depositor, but that fact is irrelevant to the threshold question of whether Defendant paid a reasonable interest rate *vel non* on Plaintiff's deposit account.[7] *Daubert* Op. & Order at 17–18; Pl. Mem. at 15–16; *see also* Hearing Tr. at 7–8. Plaintiff nonetheless insists that "to determine an objectively reasonable rate of interest, an economist would look at rates paid on investments with comparable risk profiles." Pl. Mem. at 16.[8] But Plaintiff fails to explain how a trier of fact could infer that the lower rate paid by a bank is not reasonable just because the rate is lower than the rate paid on a different investment vehicle.[9] Plaintiff's reference to the recent collapse of midsize banks like Silicon Valley Bank ("SVB") does little to move the needle. *See* Pl. Mem. at 19–20. Plaintiff fails to explain how the recent events, which have nothing to do with the instant dispute, could constitute newly available evidence for purposes of a motion for reconsideration. And, as noted by Defendant, the SVB situation likely cuts the other way: SVB apparently collapsed in part because customers with

---

[7]    For the same reason, Plaintiff's argument that MMFs and FDIC-deposit accounts are "fully substitutable" in the eyes of the Securities and Exchange Commission — even if that were true — is unavailing. *See* Pl. Mem. at 14 (citing 17 C.F.R. § 240.15c3-3(a)(17) ("The term Sweep Program means a service provided by a broker or dealer where it offers to its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product as described in § 270.2a–7 of this chapter or an account at a bank whose deposits are insured by the [FDIC].")).

[8]    Perhaps a slightly different example will better illustrate the Court's point: the risk of loss to a depositor at an FCUA-insured credit union is the same as the risk of loss to a depositor in an FDIC-insured bank, but the interest rates paid, even on very similar instruments, are different. As of March 25, 2022, for example, the national average interest rate paid by a credit union on a five-year CD was 0.78 percent, while the average rate paid by a bank on a CD of the same length was 0.60 percent. *See* National Credit Union Administration Official Website, https://ncua.gov/analysis/cuso-economic-data/credit-union-bank-rates/credit-union-and-bank-rates-2022-q1 (last visited June 22, 2023). That difference does not mean that the interest rates paid by the banks were not reasonable.

[9]    Plaintiff's argument that customers are "realigning their investments" to MMFs does not evidence an indifference to FDIC insurance. Rather, the Federal Reserve's continued effort to mitigate inflation through rising interest rates has widened the spread between the interest rates paid on Government securities and those available on bank deposits, leading to a realignment of deposits. *See* Pl. Mem. at 19 n.15 (citing Justin Baer & Charley Grant, *Charles Schwab Says It Could Ride Out a Deposit Flight - WSJ*, https://www.wsj.com/articles/charles-schwab-says-it-could-ride-out-a-deposit-flight-a8b2a626). The notion that bank depositors will shift to MMFs if the spread becomes wide enough does not mean that the lower interest rate paid by the banks is not a reasonable rate.

uninsured deposits abandoned the bank in droves when they believed their deposits were in danger, suggesting that customers found some value in FDIC insurance. *See* Emily Flitter and Rob Copeland, *Silicon Valley Bank Fails After Run on Deposits*, New York Times, (Mar. 10, 2023), https://www.nytimes.com/2023/03/10/business/silicon-valley-bank-stock.html; Andrew R. Chow, *More than 85% of Silicon Valley's* [sic] *Bank's Deposits Were Not Insured. Here's What That Means for Customers*, Time Magazine (March 10, 2023), https://time.com/6262009/silicon-valley-bank-deposit-insurance.

In essence, Plaintiff is attempting to morph her claim from one alleging that the interest rate Defendant paid on the swept cash in her deposit account was not reasonable, to one alleging that it was per se unreasonable for Defendant to sweep her excess cash into an FDIC-deposit account held by an affiliate bank instead of into a money market mutual fund or into some other "similar" instrument with a "similar risk profile" that would have yielded a higher interest rate. *See* Pl. Mem. at 17; *see also* Pl. Reply at 5–7 (arguing that the Court improperly rejected Dr. Officer's reliance on Department of Labor guidance for the proposition that MMFs are substitutable for deposit accounts).[10] That is an entirely different claim from the one Plaintiff

---

[10] Plaintiff elaborates in her Reply on her argument that Defendant incorporated statutory and regulatory language governing the use of cash in retirement accounts in Defendant's agreement to pay a reasonable rate to RASP accountholders like Plaintiff. *See* Pl. Reply at 6–8. Plaintiff argues that, because Dr. Officer relied on such statutory language as an "authoritative and helpful working definition of a reasonable rate in this exact context," the Court erred when it dismissed Dr. Officer's reliance on those guidelines for purposes of demonstrating that MMFs offer appropriate comparators to deposit accounts for setting a reasonable interest rate. *Id.* at 8. The Court did not, however, "overloo[k]" that reliance, *see id.* at 9; the Court considered it and rejected it as unhelpful to determining whether Defendant paid an reasonable interest rate on swept cash in deposit accounts, *see Daubert* Op. & Order at 14 ("[R]ather than providing an analytical framework for determining what a banker should consider in setting a reasonable interest rate for this particular type of account and why, Dr. Officer merely pointed to purported definitions of reasonableness supplied elsewhere.").

actually brought: that Defendant breached its contractual obligation to pay a reasonable interest rate on Plaintiff's deposit account.[11]

> ii. *The Court Will Not Reconsider Its Decision to Preclude Dr. Officer's Proposed Pass-Through Methodology*

Plaintiff argues again that the Court erred when it rejected Dr. Officer's use of BANA's previously used "pass-through" methodology as a proxy for determining whether the rate paid on Plaintiff's account was reasonable. *See* Pl. Mem. at 20. For the same reasons discussed with respect to MMFs and other comparators, the Court declines to reconsider its decision to exclude Dr. Officer's pass-through methodology.

Here again, Plaintiff fails to identify any intervening change of controlling law or newly available evidence, nor does Plaintiff identify any clear error in the Court's opinion. Plaintiff claims that the Court failed to consider aspects of Dr. Officer's report that were, in fact, expressly considered and rejected by the Court in its *Daubert* opinion. *Compare* Pl. Mem. at 21 (accusing the Court of "overlook[ing] Officer's analyses from ¶¶ 27–31 of his Report that '[o]ne proxy for a reasonable rate . . . is the rate that [BANA] itself used to model interest rates for the sweep accounts'") *with Daubert* Op. & Order at 12–13 (citing Officer Report ¶¶ 27–28 and 31, and finding that Dr. Officer "provides no expert explanation" for his assumption that the pass-through model yielded a reasonable interest rate). As the Court already stated, instead of explaining what factors and data a financial institution should consider and why when setting interest rates on deposit accounts, Dr. Officer's proposed pass-through model presumed that BANA's purported previous methodology yielded a reasonable interest rate simply because BANA may have once used that methodology to set interest rates. *See* Officer Report ¶¶ 27–28.

---

[11] The Court reminds Plaintiff that its decision to exclude Dr. Officer's opinion about MMFs as comparators does not prohibit her from advancing her original claim as amended in her complaint: that the interest rate paid on Plaintiff's account was not reasonable because it was less than the average interest rates paid by other FDIC-insured banks on cash balances in excess of $50,000. *See* Op. & Order on Mot. to Amend at 3; FAC ¶¶ 285–303.

Plaintiff also repeats her assertion that the Court held Dr. Officer to too high a standard and that the pass-through methodology was intended only to show that damages could be assessed on a class-wide basis. Pl. Mem. at 21; Pl. Reply at 4. But, as explained above, Plaintiff fails to demonstrate how the Court erred when it analyzed expert reports on a *Daubert* motion using the *Daubert* standard for admissibility.

In short, Plaintiff's motion for reconsideration is denied.

## II. Plaintiff's Request for Clarification Is Denied

Plaintiff alternatively asks the Court to clarify the scope of its holding in the *Daubert* opinion. Pl. Mem. at 5–6; Pl. Reply at 9. Although Local Civil Rule 6.3 governs motions "for reconsideration or reargument of a court order," "there is no Federal Rule of Civil Procedure specifically governing 'motions for clarification.'" *Nortek Inc. v. ITT LLC*, 2022 WL 2657189, at *1 (S.D.N.Y. July 8, 2022) (quoting *United States v. Timmons Corp.*, 2017 WL 11237145, at *7 (N.D.N.Y. Sept. 20, 2017)). That said, courts in this district have recognized that a motion for reconsideration "is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order." *McCaffrey v. Gatekeeper USA, Inc.*, 2022 WL 1321494, at *1 (S.D.N.Y. May 3, 2022) (citing *Metcalf v. Yale Univ.*, 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019)). If the order is unambiguous, however, then courts may generally deny a motion to clarify it. *Id.*

Plaintiff insists that the Court should "at a minimum[] clarify that it accepts Officer's report that a government MMF is as secure, if not more secure, than a bank deposit account," and whether "MMFs and FDIC-insured accounts are comparable instruments is a jury question that should await trial." Pl. Mem. at 20. These issues were discussed at length in the Court's *Daubert* opinion and re-articulated herein; to the extent Plaintiff suggests any ambiguity at all,

13

the discussion above should suffice to clarify the scope of the Court's ruling. Otherwise, the Court denies Plaintiff's motion for clarification.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 159.

**SO ORDERED.**

Date:  June 28, 2023                        **VALERIE CAPRONI**
       New York, New York              **United States District Judge**