UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SARAH VALELLY, individually and on behalf of
all others similarly situated,

                             Plaintiff,

                  -against-

MERRILL LYNCH, PIERCE, FENNER &
SMITH INC.,

                          Defendant.

-------------------------------------------------------------X

             19-CV-7998 (VEC)

             <u>OPINION & ORDER</u>

VALERIE CAPRONI, United States District Judge:

Plaintiff Sarah Valelly claims that Defendant Merrill Lynch, Pierce, Fenner & Smith Inc.

("Merrill") breached its contract with her by failing to pay a reasonable rate of interest on cash

balances in certain retirement accounts that Merrill "swept" into deposit accounts at a Merrill-

affiliated bank. *See* Aug. 5, 2025, Opinion & Order, Dkt. 302 ("Summary Judgment Opinion" or

"SJ Op."). Plaintiff moved to certify a class of all persons with retirement accounts like hers

whose cash balances were "swept" in a similar manner. *See* Mot. for Class Certification (the

"Motion" or "Mot."), Dkt. 305. Defendant opposed. *See* Opp. to Mot. (the "Opposition" or

"Opp."), Dkt. 308. The Motion is GRANTED.

## BACKGROUND

The Court has recounted the facts of this case over the course of multiple opinions. *See*

June 3, 2020, Opinion & Order, Dkt. 31 at 1–4; April 12, 2023, Opinion & Order, Dkt. 167 at 2–

8; Oct. 11, 2024, Opinion & Order, Dkt. 260 (the "*Daubert* Opinion" or "*Daubert* Op.") at 2–13;

SJ Op. at 2–9. The Court assumes the parties' familiarity with the underlying dispute and recites

the facts only to the extent they are relevant to the instant Motion.

Defendant is a registered broker-dealer that offers a brokerage product called Merrill Edge Self-Directed Investing ("Merrill Edge").  *Id.* at 3.  One feature of Merrill Edge is the Retirement Asset Savings Program ("RASP"), a "sweep program" pursuant to which free credit balances are automatically transferred to a deposit account at a Merrill-affiliated bank, such as Bank of America.  *Id*. at 2, 4.  To enroll in Merrill Edge, customers must sign the Merrill Edge Self-Directed Investing Client Relationship Agreement (the "Client Relationship Agreement").  *Id* at 3.  The Client Relationship Agreement provides, in pertinent part, that customers will earn interest on their deposits at a rate "determined at the discretion of the Merrill Lynch Affiliated Bank based on economic and business conditions," and that "[t]he interest paid on retirement account assets will be at no less than a reasonable rate."  Buchwald Decl. Ex. A, Dkt. 309-1 ¶ 4.

In August 2017, Plaintiff Sarah Valelly opened three accounts with Defendant: (1) a Cash Management Account; (2) a Roth Individual Retirement Account; and (3) a Traditional Individual Retirement Account.  SJ Op. at 8.  She agreed to the Client Relationship Agreement upon opening the accounts.  *Id.*

In August 2019, Plaintiff initiated this action, alleging, among other things, that Defendant breached the Client Relationship Agreement by paying less than a reasonable rate of interest on cash swept pursuant to RASP.  *See* Compl., Dkt. 1 ¶¶ 223–27; Am. Compl., Dkt. 55 ¶¶ 225–374.  The litigation progressed and the parties both moved to exclude one another's proposed expert testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  *See* Dkts. 112, 192, 222, 223.  In one of its opinions on the *Daubert* motions, the Court decided, in relevant part, that Plaintiff's proposed

expert, Dr. Darius Palia, would be permitted to opine on the reasonableness of RASP interest rates.[1] *See Daubert* Op. at 23–29.

Plaintiff's claims have been whittled down over the course of multiple years of litigation. Ultimately, Defendant moved for summary judgment on all of Plaintiff's remaining claims. *See* Mot. for Summary Judgment, Dkt. 267. The Court granted that motion in part, but it permitted Plaintiff's breach of contract claim arising out of the "reasonable rate" provision to proceed. *See* SJ Op. With respect to that claim, the Court noted:

> There is no dispute that there was a valid contract and that Plaintiff performed her obligations. There is also no dispute that if Defendant breached the contract, Plaintiff was damaged. The element as to which there is a dispute is whether a trier of fact could conclude that the interest rate paid by Defendant during some or all of the putative class period was not reasonable.
>
> . . . . Plaintiff has raised genuinely disputed facts about the reasonableness of RASP rates. The question of what are the appropriate benchmarks against which to assess the reasonableness of RASP rates and how the rates Defendant paid really compare are questions that a jury must decide.

*Id*. at 10, 13–14.

Plaintiff moved, pursuant to Federal Rule of Civil Procedure 23(b)(3), to certify a class consisting of all persons who had one or more Merrill Edge retirement accounts with cash balances that were swept pursuant to the RASP at any time during the period December 15, 2016, through March 15, 2020.[2] *See* Mot. She further moved to appoint herself as the class

---

[1]    The expert put forth by Defendant, Dr. Andrea Eisfeldt, did not opine on whether the rates offered through RASP were reasonable. *See Daubert* Op. at 15–16.

[2]    In Plaintiff's Memorandum, she asserts, in a footnote, that the class definition "necessarily includes any accounts that participate in RASP, including, without limitation, Traditional, Roth, Rollover, Inherited, SEP and SIMPLE retirement accounts." Pl. Mem., Dkt. 306 at 1 n.1. In the Opposition, Defendant argues, in a footnote of its own, that the class definition should not include SEP or SIMPLE retirement accounts, which are employer-sponsored accounts and which Plaintiff does not claim to have held. Opp. at 8 n.2. Defendant concedes, however, that in order to open any Merrill Edge account, the customer "must sign . . . [the] Client Relationship Agreement." *Id.* at 3. Plaintiff's claim rests entirely on the fact that she held Merrill Edge retirement accounts that were subject to the Client Relationship Agreement; the specific types of Merrill Edge accounts she held is irrelevant to any class certification argument presented by either side. The Court, therefore, agrees with Plaintiff that any Merrill Edge

3

representative and to appoint the law firm that has represented her throughout this action, Wolf

Popper LLP, as class counsel. *Id.* Defendant opposed. *See* Opp.

## DISCUSSION

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of

satisfying the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy

of representation—as well as Rule 23(b)(3)'s requirements: (1) that 'the questions of law or fact

common to class members predominate over any questions affecting only individual members'

(the 'predominance' requirement); and (2) that 'a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)."

*In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a), (b)(3)).

"The party seeking class certification bears the burden of establishing by a preponderance of the

evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*,

780 F.3d 128, 137 (2d Cir. 2015). "The Second Circuit has emphasized that Rule 23 should be

given liberal rather than restrictive construction, and it seems beyond peradventure that the

Second Circuit's general preference is for granting rather than denying class certification."

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011).

## I.    The Requirements of Federal Rule of Civil Procedure 23(a) Are Satisfied

Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate

> only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

retirement accountholder with balances swept pursuant to RASP during the relevant time period is a member of the class, regardless of what specific type of account the customer held.

Fed. R. Civ. P. 23(a).  "A district court may only certify a class if it determines that each Rule 23 requirement is met."  *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013).  The Court addresses the four Rule 23(a) factors in turn.

### a.    Numerosity

"To meet the requirements of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable . . . ."  *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (internal quotation marks omitted).  "Numerosity is presumed for classes larger than forty members."  *Penn. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Plaintiff has shown that Defendant maintained tens of thousands of retirement accounts that paid interest pursuant to RASP.  Pl. Mem, Dkt. 306 at 6.  The Court finds, and Defendant does not dispute, that this easily satisfies the numerosity requirement of Rule 23(a)(1).

### b.    Commonality

The commonality requirement of Rule 23(a)(2) "is satisfied where a single issue of law or fact is common to the class."  *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 615 (S.D.N.Y. 2018); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[E]ven a single common question will do." (cleaned up)).

Plaintiff asserts that two questions of law or fact are common among all class members: "(i) whether Merrill fails to pay retirement account-holders a 'reasonable rate' of interest; and (ii) the extent of damage suffered as a result of Merrill's breach of its reasonable rate provision."  Pl. Mem. at 6–7.  The Court agrees, and Defendant does not dispute, that these questions are sufficient to satisfy the commonality requirement of Rule 23(a)(2).

### c.      Typicality

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted).  "The requirement of typicality is not demanding."  *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (internal quotation marks omitted).  The requirement is not satisfied, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015).

It is undisputed that Plaintiff maintained a retirement account with Defendant that was governed by the Client Relationship Agreement, which contains the reasonable rate provision. Buchwald Decl. Ex. A ¶ 13.  Given that the only issue remaining in this case is whether Defendant breached the reasonable rate provision, Plaintiff appears typical.  Nevertheless, Defendant argues that Plaintiff is atypical because she is subject to unique defenses. Specifically, Defendant cites evidence that Plaintiff, who was a U.S. resident when she opened her account with Merrill in 2017, resided in Mexico from August 2019 to December 2020.[3]  *Id*. Ex. K, Dkt. 309-11 at 6.  According to Defendant, Plaintiff was required, pursuant to the terms of her agreements with Merrill, to reside in the United States for the duration of her time as a Merrill customer, and is thus not entitled to bring suit.

---

[3]      Defendant incorrectly asserts that "Plaintiff resided in Mexico for at least 16 continuous months during the class period."  Opp. at 10.  The class period ends on March 15, 2020, *see* Mot., meaning that Plaintiff resided abroad only for the final seven months of the class period.

6

Defendant's argument is meritless.  As an initial matter, the legal and factual basis for the notion that Plaintiff was required to reside in the U.S. at all times that she was a Merrill customer is tenuous at best.  The only portion of the Client Relationship Agreement that Defendant cites in support of the argument is a prefatory clause that states that Merrill Edge is "designed for U.S.-based investors."  *Id*. Ex. A ¶ 2.  At no point does the Agreement set forth an actual requirement that customers be "U.S.-based," nor does it define "U.S.-based" in a manner that would exclude Plaintiff, who lived in the U.S. at the time she opened her retirement accounts and continued to own property in the U.S. during her stint abroad.  *Id*. Ex. K at 6.  Instead, Defendant cites two "account applications" that Plaintiff supposedly saw when she opened IRA accounts with Merrill in 2019; those documents contain language requiring customers to close their accounts with Merrill if they "move to another country or spend most of [their] time outside of the United States."  *Id*. Ex. C, Dkt. 309-3 at 3; *id*. Ex. D, Dkt. 309-4 at 3.  Defendant presents no evidence, however, that Plaintiff ever saw (much less agreed to) these "account applications," nor does it explain why the applications — both of which are from 2019 — should inform the interpretation of the Client Relationship Agreement that Plaintiff signed in 2017.

More fundamentally, even assuming Defendant is correct that Plaintiff was required to reside in the U.S. in order to maintain a Merrill retirement account, that still would not render Plaintiff atypical for purposes of Rule 23(a)(3).  "The rule barring certification of plaintiffs subject to unique defenses . . . is generally applied only where a full defense is available against an individual plaintiff's action."  *Spagnola v. Chubb Corp*., 264 F.R.D. 76, 93–94 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).  Even if Defendant could succeed in showing that Plaintiff was required to close her account when she moved abroad in August 2019, that would constitute, at most, a partial defense; Plaintiff would still be entitled to damages for the many months when she was a Merrill Edge retirement accountholder before the move if the

jury were to find that Defendant failed to offer reasonable interest rates during that time.

Accordingly, there is no reason to believe that a defense arising out of Plaintiff's time outside the

U.S. "will become the focus of the litigation, thus overshadowing the primary claims, and

prejudicing other class members." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209

F.R.D. 323, 338 n.22 (S.D.N.Y. 2002); *see also Madden v. Midland Funding, LLC*, 237 F. Supp.

3d 130, 157 (S.D.N.Y. 2017) (purpose of the unique defense rule is "to protect a plaintiff class

rather than to shield defendants from a potentially meritorious suit" (internal quotation marks

omitted)).

### d.      Adequacy

The adequacy requirement of Rule 23(a)(4) "entails inquiry as to whether: 1) plaintiff's

interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd.*,

574 F.3d at 35.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of

interest between named parties and the class they seek to represent." *In re Literary Works in*

*Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 62 (1997)).

The Court finds, and Defendant does not dispute, that the adequacy requirement is

satisfied.  Plaintiff has no known conflicts of interest with other members of the class and has a

strong interest in litigating this case successfully, given the substantial balances she maintained

in her Merrill retirement accounts.  *See* Am. Compl. ¶ 120.  Plaintiff's counsel has substantial

experience litigating complex class actions, *see* Finkel Decl. Ex. A, Dkt. 307-1, and, having

already doggedly prosecuted this case for many years, has every incentive to see it through.

**II.    The Requirements of Rule 23(b)(3) Are Satisfied**

In addition to the numerosity, commonality, typicality, and adequacy requirements set forth in Rule 23(a), parties seeking to certify a class pursuant to Rule 23(b)(3) must establish "both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)).  Although Rule 23(b)(3) "'does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof,'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 79 (2d Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up)), it "imposes a 'far more demanding' inquiry into the common issues which serve as the basis for class certification" than does Rule 23(a), *id*. (quoting *Amchem*, 521 U.S. at 623–24).

The Court addresses separately the predominance and superiority requirements.

**a.    Predominance**

> *i.  Plaintiff Has Set Forth Questions Capable of Resolution with Generalized Proof*

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016).  Predominance "is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id*. (internal quotation marks omitted).  "This analysis is more qualitative than quantitative," and it "must account for the nature and significance of the material common and individual issues in the case." *Petrobras*, 862 F.3d at 271 (cleaned up).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" *Id*. at 270 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

This case presents questions that lend themselves to generalized forms of proof. The sole issue that remains for the jury to decide is whether Defendant breached its contract with Merrill Edge customers by failing to pay reasonable interest rates on RASP accounts. *See* SJ Op. at 10. "[T]here is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms." *Buffington v. Progressive Advanced Ins. Co*., 342 F.R.D. 66, 74 (S.D.N.Y. 2022). That is because such claims tend to be resolved using the same form of proof; in this case, the proof will be whatever admissible evidence Plaintiff chooses to put forth to show that "the interest rate paid by Defendant during some or all of the putative class period was not reasonable." SJ Op. at 10. Plaintiff, for her part, has already presented an expert who will testify about precisely that, and the Court has already ruled that her testimony is admissible. *See Daubert* Op. at 23–29. As Judge Rakoff explained in a recent opinion certifying a class of customers who held cash sweep accounts with another financial institution,

> [t]he determination of what the rates should have been, of course, is a foundational merits issue in this case. But once those rates are determined, [the expert's] methodology can readily be used to calculate both the class's total damages and each class member's individual damages -- regardless of whether a class member participated in the [cash sweep program] for a single day, a portion of the proposed class period, or the entire proposed class period. For these reasons, therefore, whether [Defendant] committed breach is a question capable of classwide resolution.

*Liberty Cap. Grp. v. Oppenheimer & Co.*, No. 25-CV-4822 (JSR), 2025 WL 3507217, at \*9 (S.D.N.Y. Dec. 8, 2025).

> ii. *Plaintiff's Proposed Methodology for Calculating Damages Satisfies* Comcast

Pursuant to the Supreme Court's decision in *Comcast Corp. v. Behrend*, plaintiffs seeking class certification pursuant to Rule 23(b)(3) must set forth a methodology for calculating damages that is consistent with their overall theory of liability and that "measure[s] only those damages attributable to that theory." 569 U.S. 27, 35 (2013). Although damages calculations at the class certification stage "need not be exact," *id.*, they must "show that [the putative class's] damages stemmed from the defendant's actions that created the legal liability." *Sykes*, 780 F.3d at 88. When "experts' opinions are a central basis for establishing classwide injury and causation, a district court must determine that the models provide a suitable basis for the theories of liability underpinning the plaintiffs' claims." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 554 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).

Plaintiff's expert, Dr. Palia, has put forth a methodology for calculating damages that appropriately links the putative class's potential recovery to Plaintiff's theory of liability. Plaintiff's methodology is simple: each class member's damages can be calculated by taking the "reasonable rate" determined by the jury and subtracting the rate paid to the class member. Pl. Mem. at 12. Because Plaintiff's theory of the case is that Defendant's rates were not reasonable, the nexus between Plaintiff's proposed methodology and her theory is obvious. SJ Op. at 10. Moreover, the Court has already concluded in the *Daubert* Opinion that Dr. Palia's opinions on the reasonableness of the RASP rates are admissible. *See Daubert* Op. at 23–29. Plaintiff's proposed methodology for measuring damages, therefore, satisfies the requirements established by the Supreme Court in *Comcast*.

11

Defendant puts forth three arguments to the contrary, none of which is persuasive.

*First*, Defendant argues that Plaintiff's proposed methodology fails to provide a framework for determining whether the rates offered on RASP were reasonable "based on economic and business conditions." Opp. at 18. Even if this criticism were correct, it would be irrelevant to Plaintiff's theory of liability. The provision of the Client Relationship Agreement that Plaintiff accuses Defendant of breaching provides simply that "[t]he interest rate paid on retirement account assets will be at no time less than a reasonable rate." Buchwald Decl. Ex. A ¶ 13. Although the Agreement elsewhere explains that the rate will be set "based on economic and business conditions," it does not define the term "reasonable rate" with reference to those conditions; rather, it promises that, although the Merrill-affiliated bank that holds the account retains "discretion" to set the rate in light of economic and business conditions, Defendant will provide *at least* a reasonable rate of interest. *Id*. What are "the appropriate benchmarks against which to assess the reasonableness of RASP rates" is a question that the jury will decide at trial. SJ Op. at 13.

*Second*, Defendant argues that Plaintiff's proposed methodology relies unduly on the assumption that all class members wish to maximize RASP rates. This argument is unserious. It is axiomatic that, when a contract calls for parties to act reasonably, the standard for reasonableness "must be objective." *IGT v. High 5 Games, LLC*, 380 F. Supp. 3d 390, 394–95 (S.D.N.Y. 2019) (collecting cases).[4] The subjective preferences of individual customers are irrelevant; what matters is whether the jury finds that the rates were objectively reasonable.

---

[4]    Defendant itself appeared to concede, in its memorandum of law in support of its motion for summary judgment, that the key question, for purposes of Plaintiff's breach of contract claim, was "[w]hether Merrill paid an objectively reasonable rate." Dkt. 269 at 2.

*Third*, Defendant argues that Plaintiff's proposed methodology is insufficient because it fails to "differentiate between allegedly injured and uninjured customers in the putative class." Opp. at 21. Defendant offers several definitions of an "uninjured" class member. At first, it appears to define them as customers who received interest rates similar to those enjoyed by other investors enrolled in "comparable programs" run by Defendant's competitors. *Id*. That argument puts the cart before the horse inasmuch as it assumes that the jury will agree with Defendant about (1) what constitutes a comparable program and (2) the extent to which such programs provide a useful benchmark for determining what constitutes a reasonable rate of interest. As the *Daubert* and summary judgment briefing in this case make clear, that assumption is hotly contested and will continue to be debated at trial.

Alternatively, Defendant defines "uninjured" class members as customers for whom "the sweep rate was . . . not material to their decision to open and maintain their accounts with Merrill." Opp. at 22. That is entirely irrelevant. This is *not* a fraud case. The success of Plaintiff's breach of contract claim is not contingent on the jury finding that the interest rate paid on each customer's RASP account was material to the investor's decision to maintain an account with Defendant, and Defendant provides no authority for the proposition that it is. *See* SJ Op. at 10 ("To prevail on this claim, Plaintiff must prove: (1) a valid contract existed between the parties; (2) Defendant breached the contract; (3) Plaintiff performed her obligations under the contract; and (4) Plaintiff was damaged as a result of the breach. . . . The [sole] element as to which there is a dispute is whether a trier of fact could conclude that the interest rate paid by Defendant during some or all of the putative class period was not reasonable." (citing *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 345–46 (S.D.N.Y. 2021)).

Expanding the category of "uninjured" class members even further, Defendant argues that Plaintiff's damages methodology is insufficient because it fails to account for class members

who suffer "only nominal injuries." Opp. at 22. The Court cannot make sense of that argument. Plaintiff's methodology contemplates a *pro rata* method of distribution, pursuant to which a class member's recovery is limited to the difference between the jury-determined "reasonable rate" of interest and the rate Defendant actually paid to the class member during the relevant time period. Pl. Mem. at 12.[5] Class members suffering only minor injuries, therefore, would be entitled only to minor damages. It is unclear what more Defendant imagines Plaintiff must do to account for such class members.

In sum, Plaintiff's proposed methodology for calculating damages comports with *Comcast*.

### iii. *Defendant's Remaining Arguments Fail*

Defendant raises two more arguments that Plaintiff has failed to meet the predominance requirement, neither of which is persuasive.

*First*, Defendant argues that, because all Merrill Edge accountholders agreed to be responsible for their own investment decisions, any failure to pay reasonable interest rates did not cause them harm. This argument is flatly inconsistent with logic and the Summary Judgment Opinion, in which the Court explicitly found that there is "no dispute that if Defendant breached the contract" by failing to pay reasonable interest rates, "Plaintiff was damaged."[6] SJ Op.at 10.

Alternatively, Defendant argues that, to the extent Defendant's failure to pay reasonable interest rates harmed putative class members, the jury nevertheless would need to make

---

[5]     Presumably the parties will have the jury determine what was a reasonable rate on a monthly or (perhaps) quarterly basis.

[6]     Defendant's argument that the jury would need to determine whether each customer "used the sweep program in a way that was . . . consistent with its design or purpose" in order to find that Defendant "caused the alleged harm" fails for the same reason. Opp. at 14. The jury will not need to determine, in the abstract, whether Defendant caused harm; the Court has already found that, if Defendant failed to pay a reasonable interest rate, it harmed customers. SJ. Op. at 10.

individual inquiries into whether each putative class member could have "invested cash in one of Merrill's many cash products designed for investing" or "opened an account at an institution that offered a higher interest rate." Opp. at 14.  The jury will do nothing of the sort.  As explained, the sole issue to be decided at trial is whether the interest rates Defendant paid to its customers were reasonable.  SJ Op. at 10.  To make that decision, the jury will need to determine "the appropriate benchmarks against which to assess the reasonableness of RASP rates and how the rates Defendant paid really compare." *Id*. at 13.  It is likely that "the jury will determine what is a 'reasonable' rate by looking at rates paid by similar programs within the banking industry." *Id*. at 12 n.15.  Regardless of how the Court ultimately instructs the jury to make its determination, however, Defendant fails to explain why the range of investment choices available to *individual* customers could possibly be relevant to the question of whether the rates that Defendant offered to *all* Merrill Edge retirement accountholders were reasonable.[7]

*Second*, Defendant argues that individualized inquiries would be necessary to determine the extent to which each putative class member mitigated damages.  Not so.  Although it is true that plaintiffs in breach of contract actions are generally "obligated to take whatever reasonable actions they [can] to minimize their damages," *Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir. 1985), they "need not make expenditures to mitigate damages where the breaching party had the same opportunity to prevent damages," *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 112 (2d Cir. 2010) (quoting *Travelers Indem. Co. v. Maho Mach. Tool Co.*, 952 F.2d 26, 31 (2d Cir. 1991)).  Courts also impose a "more forgiving standard" for a party that

---

[7]    Defendant's observation that the extent of each class member's harm may have a "temporal component," inasmuch as Merrill may have offered different rates at different points at time, does not alter the Court's conclusion.  Although the particular rates that Merrill offered at the time a class member was a customer may affect the amount of damages to which the class member is entitled, "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Roach*., 778 F.3d at 405.

"has fully performed all of its contract obligations and is thrust into the shoes of the breaching party as it scrambles to mitigate the impact of the breach." *APL*, 592 F.3d at 112. Here, there is no dispute that (1) the Client Relationship Agreement provides that the rate "paid on retirement account assets will be at no less than a reasonable rate," SJ Op. at 4, and (2) "Plaintiff performed her obligations" pursuant to the Agreement, *id.* at 10. Nevertheless, Defendant insists that its customers had an ongoing obligation to mitigate damages by, among other things, "compar[ing] rates available on other products in order to obtain a higher interest rate," "compar[ing] RASP rates to rates paid on sweep programs at other brokerage firms," and potentially "opening . . . other types of accounts that earned higher interest rates." Opp. at17. Defendant offers no evidence that customers are any more primed to engage in this sort of analysis — which has been the subject of multiple expert reports in this case — than Defendant is to raise interest rates.

Regardless, even assuming that the Court would allow the Defendant to pursue such a defense,[8] it would only affect the amount of damages to which individual class members would be entitled; it would not predominate over the question of law common to all class members, which is whether the rates that Defendant paid were reasonable. *See Liberty Cap. Grp.*, 2025 WL 3507217, at *1 ("[E]ven if other potential affirmative defenses, such as mitigation, might involve individualized considerations, courts have routinely held that the invocation of such affirmative defenses is insufficient to defeat class certification.").

---

[8] Lest Defendant is under any misimpression of what will be permissible as a defense at trial: it cannot defend this case by arguing that class members have only themselves to blame because they could have earned a higher interest rate had they used a different brokerage firm for their retirement account. It is undoubtedly true that customers would have earned higher interest rates on idle cash at other brokerage houses or had they invested their idle cash in other investment products (including money market mutual funds, a product Plaintiff desperately wants to use to demonstrate that the RASP rates were not reasonable). That higher interest rates could have been earned from other brokerage houses or through other investment vehicles is simply not relevant to whether Merrill breached the commitment it made to its customers to pay "not less than a reasonable rate" on RASP balances.

Accordingly, the Court finds that Plaintiff satisfies the predominance requirement of Rule 23(b)(3).

### b.    Superiority

Rule 23(b)(3)'s superiority requirement "asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016). Factors relevant to the superiority inquiry include (1) the interests of class members in "individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court finds, and Defendant does not dispute, that Plaintiff has satisfied the superiority requirement. First, the Court agrees with Plaintiff that, given the relatively small amount of recovery likely available to most class members, they will generally have little interest in bringing individual actions. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) ("[C]lass treatment is often deemed superior in negative value cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually." (internal quotation marks omitted)). Second, neither party has alerted the Court to ongoing litigation in any other forum concerning the retirement accounts at issue here. Third, concentrating the litigation in this forum is reasonable, given the fact that Defendant's principal executive offices are located in this District and it has proceeded here without issue for more than six years. *See* Am. Compl. ¶ 38. Fourth, the Court does not foresee any difficulties in managing this case as a class action, given the experience of Plaintiff's counsel

and the fact that the case has already proceeded efficiently through summary judgment. Litigating each case individually, by contrast, would create vast inefficiencies for Defendant and class members alike.

Accordingly, the Court finds that the superiority requirement is satisfied.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is GRANTED.  The Court hereby CERTIFIES Plaintiff to act as a representative of a class consisting of all persons who had one or more Merrill Edge retirement accounts with cash balances that were swept pursuant to the Retirement Asset Savings Program at any time during the period December 15, 2016 through March 15, 2020.  Wolf Popper LLP is appointed as class counsel.  The Clerk of the Court is respectfully directed to terminate the open motion at Dkt. 305.

The parties are ordered to meet and confer regarding trial.  Not later than **Thursday, March 19, 2026**, the parties must file a joint letter informing the Court how long they expect trial will take and providing three mutually convenient dates for trial between June 15, 2026, and December 15, 2026 (but not during the last two weeks of August or the first three weeks of September).  The letter should also indicate whether the parties would like a referral for a settlement conference before Magistrate Judge Wang.

The parties must appear for a conference to discuss the trial on **Friday, March 27, 2026, at 10:00 A.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007.

**SO ORDERED.**

Date:  **February 26, 2026**
       **New York, New York**

_____
    **VALERIE CAPRONI**
    **United States District Judge**

18