UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SARAH VALELLY, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>-against-<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,<br><br>Defendant. | : | 19-CV-7998 (VEC)<br><br>OMNIBUS ORDER |

VALERIE CAPRONI, United States District Judge:

At the May 28, 2026, oral argument on the motions *in limine*, the Court ordered supplemental briefing on two issues: first, whether trial in this matter should be bifurcated into separate phases for determining damages and liability; and second, whether Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill") should be permitted to introduce evidence regarding its proposed affirmative defense about the purported duty of class members to mitigate damages. The Court also reserved decision on Merrill's motion *in limine* to preclude Plaintiff from presenting opinions that the interest rates paid on swept cash via Merrill's Retirement Asset Savings Program ("RASP") were unreasonable because Merrill swept funds to affiliated entities.

The Court assumes the parties' familiarity with the facts of the case and addresses these three issues in turn.

## I. Bifurcation

Pursuant to Federal Rule of Civil Procedure 42(b), the Court may, "[f]or convenience, to avoid prejudice, or to expedite and economize, . . . order a separate trial of one or more separate issues." The Court has broad discretion "to grant a separate trial of any kind of issue in any kind

of case." *Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011). In deciding whether to bifurcate, the Court considers, among other things, "whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.,* 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (citation omitted).

Bifurcation is appropriate in this case in light of the complexity of the facts and the distinct inquiries the jury will be asked to perform at the liability and the damages phases. The key question with respect to liability in this case is relatively simple: did Merrill, at any point during the class period, fail to pay reasonable interest rates on swept funds? If the jury answers in the negative, the case is over. If the jury answers in the affirmative, it will then need to answer a much more specific question: what *would* have been a reasonable interest rate, and how does that rate compare to the rate Merrill actually paid?

The second question is significantly more complicated than the first because the class period spans more than three years, from December 15, 2016, to March 15, 2020. *See* Opinion & Order on Mot. for Class Certification, Dkt. 325 ("Class Certification Opinion" or "Class Cert Op.") at 18. What interest rate would have been "reasonable" at one point in the class period may or may not have been reasonable at another point in the class period; assuming a Plaintiffs' verdict on liability, the jury will need to determine what would have been a reasonable rate at each point during the class period for which the jury determined Merrill did not pay a reasonable rate. *See* May 28, 2026, Conference Tr., Dkt. 383 ("Oral Argument Tr.") at 56:1–6 (the Court explaining that the jury must "figure out what a reasonable rate of interest would have been for each either month or quarter" of the class period). Depending on whether it finds Merrill liable, the jury may or may not need to make that determination at all. If it does, however, it will be far

better equipped to do so if it has first addressed the simpler question of whether there is liability at all.

Requiring the jury to determine concurrently both the threshold question of liability and the more granular question of how much Merrill underpaid customers would increase the likelihood of juror confusion, which could prejudice either party. For example, Plaintiff would be prejudiced if the jury, having been presented with evidence from the entire class period, concluded that, because Merrill paid reasonable interest rates during some or most portions of the class period, Merrill is not liable — even if there were times during the class period when rates were not reasonable. Alternatively, Merrill would be prejudiced if the jury concluded that, because the rates Merrill paid at certain points in the class period were unreasonable, the class is entitled to damages throughout the entire class period — even if there were some portions of the class period during which the rates paid were reasonable. Either conclusion would fail to address fully the issues in this case, which are whether Merrill, at any point during the class period, failed to pay a reasonable rate of interest, *and*, if it did, what would have constituted a reasonable rate of interest at those points.

Plaintiff argues that bifurcation would be inefficient because the evidence needed to prove liability is similar to the evidence needed to prove damages. But bifurcation is appropriate precisely *because* this case requires the jury to consider similar evidence for distinct purposes, which could otherwise blend together. Plaintiff insists that the question of liability is not meaningfully different from the question of damages because her methodology for calculating damages "is simple: each class member's damages can be calculated by taking the 'reasonable rate' determined by the jury and subtracting the rate paid to the class member." Pl. Mem., Dkt. 376 at 2. That, however, is precisely the type of oversimplification that the Court hopes the jury will avoid adopting if the case is bifurcated. It is likely not true that the jury will determine a

single "reasonable rate" that Merrill was obligated to pay. Given significant economic changes during the class period, it seems more likely that a jury will determine that different rates of interest would have been reasonable at different points during the class period. *See* Expert Report of Prof. Darius Palia, Dkt. 229-1 ¶ 134 (Plaintiff's expert proposing a "range of reasonable interest rates," which differ from month to month). Even if the jury were to adopt fully Plaintiff's methodology for calculating damages (which it may or may not do, even if it finds that Merrill's rates were, at some points during the class period, unreasonable), it will still be required to "determine what was a reasonable rate on a monthly or (perhaps) quarterly basis." Class Cert Op. at 14 n.5. The jury, therefore, will need to determine not one, but conceivably *many* "reasonable rates" over the course of the 39-month class period.

Plaintiff also argues that bifurcation would give Merrill "additional bites at the apple" because that process would enable it to relitigate certain issues at the damages phase that should be resolved by the liability phase. Pl. Mem. at 6. To the extent this is a valid concern, it can be addressed through effective trial management; the Court will not permit the parties to rehash in the second phase of the trial arguments already fully litigated during the first. In all events, the Court is wary of dismissing arguments as duplicative simply because they share an evidentiary basis. For example, Plaintiff expresses worry that Merrill will "argue during liability that RASP rates were comparable to sweep deposits reported by Crane, and thus (in its view) reasonable," lose that argument, and then, in the damages phase, "again attempt to point to the Crane index as a reliable source of damages." Pl. Mem. at 6. But that would not be inherently improper. If, for example, the jury were to find that Merrill's interest rates were unreasonable because they failed to align with those in the Crane index at some points during the class period, then it would be entirely appropriate to return to the Crane index to calculate damages.

Plaintiff also argues that she may be prejudiced because "the jury will recognize that, if it finds no breach, it will not need to return for a second proceeding potentially involving the same witnesses and disputes, at additional personal inconvenience." Pl. Mem. at 7. That concern is easily ameliorated in one of two ways. The Court could simply tell jurors that the trial will proceed in two phases and that they should expect to be present for both phases with no further information about what the second phase will entail.[1] Alternatively, the Court could tell the jury nothing about damages until after they return a verdict on liability.[2]

Plaintiff also raises general concerns about the prospect that her experts may be required to testify twice across the two phases of the trial. The Court is skeptical — and Plaintiff provides no non-conclusory evidence to show — that the prospect of requiring some of Plaintiff's witnesses to testify twice would meaningfully increase the expenses Plaintiff has incurred over the past seven years of litigating this nation-wide class action. Regardless, Plaintiff's concerns about cost are outweighed by the need to avoid juror confusion and maximize efficiency.

In sum, the Court finds it appropriate, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate this trial into a damages phase and a liability phase.[3]

---

[1] To the extent Plaintiff's concern about the prejudicial effect of juror exasperation is justified, it would be at least equally likely to materialize if the trial were to proceed in a single phase. As discussed, if Merrill is found liable, calculating damages will be a complicated process because the jury will need to examine the rates Merrill offered at various points during the class period, determine what would have been a "reasonable rate" at every point, and calculate the difference. A jury with an allergy to, as Plaintiff puts it, "personal inconvenience" may be reluctant to find Merrill liable if it knows that, by doing so, it would have to engage in additional complex and time-consuming deliberation. Pl. Mem. at 7.

[2] Such a procedure is not uncommon in cases where a plaintiff seeks punitive damages. In such circumstances, it is not unusual to have the jury, in a "phase one" proceeding, determine whether the defendant is liable and whether the predicate for punitive damages has been met, and then inform the jury that they will need to return for a second phase (during which they hear evidence relevant to punitive damages, deliberate, and reach a verdict on that issue).

[3] Plaintiff also argues that Merrill's proposed mitigation defense does not support bifurcation, and that bifurcation will not encourage settlement. *See* Pl. Mem. at 8–9. Because the Court does not base its decision on either of those arguments, it need not address them. Plaintiff also argues that, in a bifurcated trial, the Court should ensure that the question posed to the jury at the liability phase is phrased as simply as possible; specifically, "whether Merrill provided an unreasonable RASP rate at any time during the Class Period." *Id.* at 9. The Court

## II. Motions *in Limine*

At the May 28, 2026, oral argument, the Court held in abeyance two motions in *limine*: Merrill's motion to preclude Plaintiff from arguing that Merrill's rates were not reasonable because they swept funds to affiliates, and Plaintiff's motion to preclude Merrill from introducing an affirmative defense that class members had a duty to mitigate damages by reallocating idle cash out of RASP.

### A. Affiliated Sweeps

Merrill's motion to preclude Plaintiff from arguing that its rates were not reasonable because they swept to affiliated accounts is denied without prejudice to Merrill objecting to specific lines of argument that lack a factual predicate. At the outset, the Court notes that it has long recognized as colorable the argument that a sweep to an affiliated bank reflects a conflict of interest and, hence, that the rates paid on such swept funds should be scrutinized closely. *See* Jan. 25, 2021, Opinion & Order on Motion to Amend, Dkt. 54 at 4 ("Merrill Lynch may have many explanations for why it chose to sweep excess cash to its affiliated bank and a finder of fact may agree that the interest rate paid was reasonable. Or, a finder of fact could conclude that Merrill Lynch swept huge amounts of cash into its affiliated bank, yielding an interest rate that was not reasonable . . . ."). As a result, the Court has been skeptical of Merrill's argument that Plaintiff should be precluded from arguing that the Crane dataset is flawed because it includes programs that sweep to affiliated banks. *See* Aug. 5, 2025, Opinion & Order on Mot. for Summary Judgment, Dkt. 302 at 13 ("There are differences between the products Plaintiff wants

---

does not yet need to decide precisely how it will instruct the jury. The parties will have ample opportunity to propose jury instructions for both phases of the trial at a later time. That said, the Court sees some utility in having the jury determine during the liability phase both whether there were any periods during the class period when Merrill failed to pay a reasonable rate of interest and the periods during which it did so. That would allow focused attention during the damages phase (in terms of evidence and argument) on just those class periods.

to use as comparators and RASP that a jury might (or might not) find to be material, and a jury may reject Plaintiff's arguments why [Merrill's expert] Dr. Eisfeldt's analysis is faulty. The problem for Defendant is that the appropriateness of the various possible comparators and the validity *vel non* of Dr. Eisfeldt's analysis are all questions of fact that must be decided by a jury.").

That said, it is not enough, for purposes of establishing that Merrill's rates were unreasonable, for Plaintiff simply to note that sweeps to affiliates are conflicted transactions. As Merrill stated — without objection by Plaintiff — at oral argument, Plaintiff's expert did not "conduct any analysis to support the conclusion that there is a distinction between rates [paid on] . . . sweeps to affiliates, and sweeps to unaffiliated entities." Oral Argument Tr. at 30:4–12. Absent evidence that rates paid on Merrill's affiliated sweeps actually *were* lower than comparable sweeps to non-affiliated entities, the general observation that Merrill's transactions were conflicted would serve little purpose other than to sow general "[s]kepticism" about Merrill's rates. *Id.* at 33:2–7.

Accordingly, although Plaintiff is not precluded outright from arguing that sweeps to affiliates present a conflict of interest and therefore rates paid on such funds should be examined carefully, she is cautioned that any such argument must be supported by actual evidence that the rates paid on such sweeps were lower than the rates paid on comparable sweeps to non-affiliates. Without that evidence, the Court may be amenable to an objection that the probative value of this line of argument is outweighed by its unfair prejudicial impact and, therefore, should be precluded pursuant to Federal Rule of Evidence 403.

**B. Duty to Mitigate**

Finally, the Court turns to Merrill's proposed affirmative defense regarding the duty to mitigate. As an initial matter, the Court will review briefly (not for the first time, but certainly

for the final time) the governing law regarding mitigation. As the Court explained in the Class Certification Opinion and at the May 28, 2026, oral argument, it is well established that "[t]he victim of a breach of contract need not make expenditures to mitigate damages where the breaching party had the same opportunity to prevent damages." *APL Co. PTE v. Blue Water Shipping U.S. Inc*., 592 F.3d 108, 112 (2d Cir. 2010) (quoting *Travelers Indem. Co. v. Maho Mach. Tool Co*., 952 F.2d 26, 31 (2d Cir. 1991)). Merrill attempts to avoid this rudimentary principle of contract law by arguing that it arises out of "an admiralty case applying federal common law, not New York law." Def. Mem., Dkt. 377 at 3. Merrill does not support that assertion with a citation to *APL*, which explicitly states that it is applying New York law.[4] *See APL*, 592 F.3d at 111 n.3 ("[A]ll sides agree that New York contract law governs."). Merrill's observation that it has been unable to find "a single New York State Court of Appeals decision that articulates" the principle, Def. Mem. at 3, is immaterial; the apparent absence of authority from the New York Court of Appeals does not require the Court to adopt Merrill's *ipse dixit* in lieu of the legal conclusions of the Second Circuit, other courts in this District, New York state trial courts, and leading treatises, all of which have recognized the principle. *See, e.g.*, *id.*; *Tr. for the Certificate Holders of the Merrill Lynch Mortg. Pass-Through Certificates Series 1999-C1 v. Love Funding Corp*., 736 F. Supp. 2d 716, 725 n.45 (S.D.N.Y. 2010) ("[T]he victim of a breach of contract need not make expenditures to mitigate damages where the breaching party had the same opportunity to prevent damages."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co*., No. 14CV04394AJNBCM, 2016 WL 4613390, at *19 (S.D.N.Y. Aug. 31, 2016) (same); *Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of New York*, No. 99 CIV. 12175 (AKH), 2004 WL

---

[4] Merrill is correct that *Travelers*, the case that *APL* cited for the proposition in question, was an admiralty case that applied "traditional [Uniform Commercial Code] principles," rather than the law of a particular state. *Travelers*, 952 F.2d at 29. But that does not give this Court discretion to ignore *APL*'s explicit directive that the general principles undergirding the *Travelers* decision apply under New York law.

1858314, at *8 (S.D.N.Y. Aug. 20, 2004) (same); *Chrysler First Fin. Servs. Corp. of Am. v. Chicago Title Ins. Co*., 156 Misc.2d 814, 823 (Sup. Ct. N.Y. Cnty. 1993) ("[T]he law is well settled that a plaintiff is not obligated to mitigate where a defendant has an equal opportunity to do so."); 22 Am. Jur. 2d Damages § 359 ("A plaintiff is not under a duty to mitigate damages if the other party, who had the duty to perform under the contract, had an equal opportunity to perform and equal knowledge of the consequences of failure to perform or an equal opportunity to reduce damages.")

As for Merrill's specific proposed defense, the Court reserves final decision on whether and to what extent it will be permitted to raise the defense until the jury has rendered a verdict on liability. If the jury finds that Merrill is not liable, then the question will be moot. If the jury finds that Merrill is liable, then the Court will revisit the defense in light of the evidence that Merrill presents during the liability phase. That evidence, in turn, may inform the Court's view on issues raised in the parties' briefing, including the extent to which a reasonable customer could be expected to recognize and respond to Merrill's failure to pay a reasonable rate of interest and what such mitigation measures would cost the customer.[5]

## CONCLUSION

For the foregoing reasons, the Court BIFURCATES this case into two phases: the first to determine Merrill's liability, and the second, if the jury finds Merrill liable, to determine the amount of damages to which class members are entitled. The Court DENIES WITHOUT PREJUDICE Merrill's motion to preclude Plaintiff from presenting opinions related to the

[5] At a minimum, moving money away from the sweep account and into some other similar cash instrument would cost the customer some time to execute the trade and would impose further costs of time (and perhaps money) when the customer decides to move the funds away from a cash investment into some other investment vehicle. That is to say, the customer would lose the benefit of friction-free movement of excess cash to execute any of the mitigation measures pressed by Merrill.

conflicted nature of Merrill's sweeps to affiliates, and HOLDS IN ABEYANCE Plaintiff's motion to preclude Merrill from presenting evidence in support of its affirmative defense that class members had a duty to mitigate damages.

The parties must file proposed *voir dire* questions and joint pretrial orders not later than **August 14, 2026**. The parties should file separate joint pretrial orders for the two phases of the trial. Only a single set of *voir dire* questions is needed, however, because the two phases of the trial will proceed before the same jury.

**SO ORDERED.**

**Date: July 14, 2026**
**New York, New York**

Valerie Caproni

**VALERIE CAPRONI**
**United States District Judge**